OPINION OF THE COURT
Edward M. Horey, S.
The proceeding before the court is for the judicial settlement and allowance of the accounts of the Penn Bank, as executor of the estate of Jock F. Shannon, deceased. In issue is the proper disposition of the decedent’s residuary estate.
By the residuary clause in his will, testator Jock F. Shannon bequeathed one half of his residuary estate to a brother-in-law, one Floyd E. Wheeler, and one half to a brother, Eugene B. Shannon. The language employed was a bequest of “an undivided one-half (1/2) to each, their heirs and assigns”.
*1034 Both residuary legatees predeceased the testator. Floyd E. Wheeler left surviving, as distributees, a wife and one child. Eugene B. Shannon left no wife or issue surviving. His distributees are unknown.
The issue before the court is whether the residuary legacies lapse or come within the provisions of either EPTL 3-3.3 or 3-3.4. Both sections are' commonly denominated “antilapse” statutes. They differ materially in their terms.
EPTL 3-3.3 deals with any devise or.bequest to a spouse or to a brother or sister. It provides, in relevant part, as follows:
“(a) Unless the will provides otherwise:
“(1) Whenever a testamentary disposition is made to the issue or to a brother or sister of the testator, and such beneficiary dies during the lifetime of the testator leaving issue surviving such testator, such disposition does not lapse but vests in such surviving issue, per stirpes.”
EPTL 3-3.4 deals only with devises or bequests of a residuary estate. It is applicable, however, to residuary devises or bequests made to any person. It provides as follows: “Whenever a testamentary disposition of property to two or more residuary beneficiaries is ineffective in part, as of the date of the testator’s death, and the provisions of 3-3.3 do not apply to such ineffective part of the residuary disposition nor has an alternative disposition thereof been made in the will, such ineffective part shall pass to and vest in the remaining residuary beneficiary or, if there are two or more remaining residuary beneficiaries, in such beneficiaries, ratably, in the proportions that their respective interests in the residuary estate bear to the aggregate of the interests of all remaining beneficiaries in such residuary estate.”
The attorney for the executor insisted so adamantly on oral argument that he approached the point of discourtesy, that the saving provisions of EPTL 3-3.4 passed the residuary bequest made to the brother-in-law, Floyd E. Wheeler, to Floyd E. Wheeler’s surviving wife and child. With equal excess of vigor, he further insisted that the same provisions of EPTL 3-3.4 passed the residuary bequest made to the decedent’s brother, Eugene B. Shannon, to the surviving *1035 wife and child of Floyd E. Wheeler. The Assistant Attorney-General and the guardian ad litem have taken the position that they are unsure of the proper disposition to be made of the two parts of testator’s residuary estate and will rely on the decision of the court.
In his memorandum, the attorney for the executor relies on the decision made in Matter of Cathers (99 Mise 2d 540, Bernard Reagan, S.), which decision, in turn, relied on the determination reached in Matter of Stanbridge (69 Mise 2d 331, Louis Laurino, S.). To reach what is hoped to be an intelligent decision in the case at bar, it is necessary that the two cited decisions be reviewed.
In Matter of Stanbridge (69 Misc 2d 331, supra) a bequest of one half of testatrix’ estate was made to a sister, Louise. It was provided that if the sister, Louise, predeceased the testatrix, then the bequest of one half of the residuary estate was to pass one half to a niece, Audrey, and one half to another sister, Carrie. The primary beneficiary, testatrix’ sister, Louise, predeceased the testatrix. So also did the alternate beneficiaries, testatrix’ niece, Audrey, and testatrix’ sister, Carrie.
The court held that the alternate bequest to sister, Carrie, fell within the saving antilapse provisions of EPTL 3-3.3, and that the bequest to Carrie would vest in Carrie’s two issue, Frank and Jessie Dorfrom, as “surviving issue” of a deceased sister.
The court also held that the alternate bequest to Audrey did not fall within the provisions of EPTL 3-3.3 because it was a bequest to a niece and not to the “issue or [to a] brother * * * or sister” of the testatrix. (Matter of Stan-bridge, supra, p 332.) However, the court opined that the bequest to Audrey, nevertheless, “shall vest in the remaining residuary beneficiaries pursuant to EPTL 3-3.4 ‘in the proportions that their respective interests in the residuary estate bear to the aggregate of the interests of all remaining beneficiaries in such residuary estate’.” (Matter of Stanbridge, supra, p 333; italics added.)
What is not disclosed in the decision of Matter of Stan-bridge is who the court considered “the remaining residuary beneficiaries” were. If the case is interpreted to mean that the bequest to the niece, Audrey, vested, pursuant to *1036 EPTL 3-3.4, in the surviving residuary legatees of the other one half of the testatrix’ residuary estate, who were not named in the opinion, this court has no quarrel with the decision. However, if the decision is interpreted to mean that the bequest to the deceased niece, Audrey, was determined to vest in Frank and Jessie Dorfrom who were not named residuary legatees, then this court is of the opinion that the decision was in error.
Apparently, it was this latter view of Matter of Stan-bridge that was taken in a subsequent case. For in Matter of Cathers (99 Misc 2d 540, supra), a bequest of the residuary estate of a testator had been made, in equal shares, to a sister and to a brother. Both the sister and the brother predeceased the testator. The sister left three issue surviving her. The brother left no issue surviving him. It was held first, that the residuary bequest to the sister passed to her issue because of the antilapse provisions of EPTL 3-3.3, which provides that any bequest to a brother or sister, whether a residuary bequest, or otherwise, “does not lapse but vests in such surviving issue [i.e., surviving issue of deceased brother or sister], per stirpes” (see EPTL 3-3.3, subd [a], par [1]). More importantly, the court held (p 542) that the residuary bequest to the deceased brother, who left no issue, also vested in the three issue of the deceased sister as “remaining residuary beneficiaries”. EPTL 3-3.4 was cited in support of this determination, as was Matter of Stanbridge (69 Misc 2d 331, supra).
Whatever doubt may attend the decision of Matter of Stanbridge (supra), there is no doubt that in Matter of Cathers (supra) the court clearly held that in the instance where all residuary beneficiaries had predeceased the testator and there was no alternate gift, and EPTL 3-3.3 was inapplicable, the share of a named residuary beneficiary, who predeceased the testator without issue was to be channeled through a named residuary beneficiary who died with issue, to that issue. It is not clear whether this result was solely because EPTL 3-3.3 was applicable to the share of the residuary legatee who died with issue. At any rate, the holding in Matter of Cathers is that the unnamed issue of a named residuary beneficiary are to be equated with the named deceased residuary beneficiary for the purposes of inheritance under EPTL 3-3.4.
*1037 With all due respect to my learned brother and friend, Judge Reagan, I most respectfully disagree with the conclusion which he reached in Matter of Cathers.
The reasons for my disagreement follow:
First, EPTL 3-3.4 does not have application when all of the named residuary beneficiaries have predeceased the testator. It only has application when the disposition of the residuary estate “is ineffective in part”. (Italics added.) See EPTL 3-3.4 and Rohan, New York Civil Practice (vol 9, par 3-3.4 [2]), wherein it is stated: “In this connection it should be noted that the operation of this section [3-3.4 EPTL] is specifically limited to instances of a partial invalidity in the residuary clause, as of the date of the testator’s death * * * Again, as the statute’s very terms imply, a complete failure of the residuary would not be governed by its terms.” In Matter of Cathers there was a complete failure of the residuary bequest as all named beneficiaries predeceased the testator. It would appear for this reason alone that EPTL 3-3.4 would have had no application.
Secondly, the history leading to the adoption of EPTL 3-3.4 is contrary to a conclusion that a bequest to a deceased residuary beneficiary should be channeled through that beneficiary to the beneficiary’s issue. The report of the Temporary State Commission which recommended the adoption of EPTL 3-3.4 discloses that its purpose was to abolish the common-law rule that there could be “no residue of a residue”. The commission recommended that a statute be enacted that would provide that a lapsed residuary gift vest in the surviving residuary legatees in the absence of a contrary intent in the will. Accordingly, the commission sponsored a bill to that end in the 1963 legislative session. The report states: “The bill was not passed, however, because there was some doubt that the presumption so created would actually approximate the true intention of the testator. It was suggested that it might be preferable to favor the spouse and children of the deceased legatee. The Commission * * * undertook a further study and review of its previous recommendation.” (Third Report of Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, NY Legis Doc, 1964, No. 19, p 312.)
*1038 It was at that point that the Court of Appeals decided. Matter of Dammann (12 NY2d 500). In that case, one of eight residuary legatees had predeceased the testatrix. Overruling the determination of the Surrogate and a unanimously affirming Appellate Division, the Court of Appeals held that the lapsed legacy should vest in the surviving residuary legatees. The decision was reached on a presumed intent of testator to dispose of his whole estate by will. As to the long-standing common-law rule expressed in the phrase “no residue of a residue” which would have passed the lapsed interest into intestacy, the court said it was only a “ Technical’ ” rule “reluctantly enforced by courts when tokens are not at hand to suggest an opposite intention”. Tokens of opposite intention were found by the court and intestacy was avoided. (Third Report of Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, NY Legis Doc, 1964, No. 19, p 312.)
Strengthened by the decision in Matter of Dammann (supra), the commission again resubmitted its previous recommendation and again sponsored a bill in 1967 providing that partially lapsed residuary bequests would pass to remaining residuary legatees. Concededly, this represented a conscious choice of the remaining residuary beneficiaries over the spouse and relatives of the deceased residuary beneficiary who was to take.
What is important to the case at bar is the reasoning of the commission. In support of its recommendation, the commission pointed out that what was being proposed was “a rule of construction rather than a question of policy”. (Op. cit., p 313.) In booning for a statute that would take the lapsed residuary bequest to the surviving residuary legatees, rather than to a spouse, or children, or relatives of a deceased residuary legatee, the commission said: “it is questionable whether most testators could be said to intend that the spouses of near relatives should take by representation, much less those of strangers in blood. The desire to benefit such a stranger in blood would ordinarily be limited to the named individual, and not include members of his family.” (Op. cit., p 313.)
In brief, the report of the temporary commission makes it clear that it found that the intention of most testators *1039 was to benefit only the named individual legatee, or legatees. The committee found, specifically, that the intention of most testators was not to benefit even a spouse, or children of the named legatee, or legatees. Rather, it was the conclusion of the commission that most testators would prefer a lapsed residuary bequest to go to the other residuary beneficiaries which they had selected.
It is submitted that the construction given the statute in Matter of Cathers (99 Misc 2d 540, supra) and possibly also, in Matter of Stanbridge (69 Misc 2d 331, supra), which conveys not only that part of a residuary bequest made to a deceased residuary beneficiary to issue of that deceased beneficiary, but also conveys to them that part of the residuary bequest to other residuary legatees who had no issue surviving, is completely contrary to what the commission found to be the intention of “most testators”, and is certainly contrary to what the commission intended would be accomplished by the enactment of the statute.
Thirdly, this court is of the opinion that the language of EPTL 3-3.4 requires a conclusion contrary to that reached in Matter of Cothers (supra).
While EPTL 3-3.4 does concededly contain an exception to the application of its provisions when those of EPTL 3-3.3 are applicable to a particular residuary bequest; the exception is only applicable to “such ineffective part of the residuary disposition”, as EPTL 3-3.3 has application. (Italics added.) The exception is not applicable to other ineffective parts of a residuary bequest to which EPTL 3-3.3 has no application. Thus, by its very terms, EPTL 3-3.4 will not apply to residuary bequests made to a spouse, or to a sister, or brother. In those instances, EPTL 3-3.3 will apply and vest the residuary bequest made to those persons in the event of their death in the “surviving issue” of the deceased spouse, brother or sister. What is important to note is that there is nothing in the language of EPTL 3-3.4 that permits a bootstrap extension of the EPTL 3-3.3 exception to other nonqualifying bequests.
In summary, merely because EPTL 3-3.4 permits EPTL 3-3.3 to operate and vest ineffective parts of a residuary disposition made to a spouse, brother, or sister in their issue, it does not authorize lapsed residuary dispositions *1040 made to persons other than to a spouse, brother, or sister to so vest. Neither does EPTL 3-3.4 permit EPTL 3-3.3 to operate on a bequest to a spouse, brother, or sister if such spouse, brother, or sister had no issue surviving them. This, of course, is the consequence of the fact that the substitute beneficiaries under EPTL 3-3.3 are limited to “issue” of a deceased spouse, brother or sister. If there are no such “issue” then, of course, EPTL 3-3.3 is without application and fails under its own provisions.
Finally, while EPTL 3-3.4 seeks to avoid intestacy of a residuary estate by providing a conscious choice of remaining beneficiaries over the spouse and relatives of the residuary beneficiary, that statute was never designed or proposed to avoid intestacy in every instance. As we have noted previously, it has no application in the instance of a complete failure of such bequest. It is limited in application to only a partial failure of such bequest. (9 Rohan, NY Civ Prac, par 3-3.4 [2], previously cited, and 4B Warren’s Heaton, Surrogates’ Courts, § 408, par 2 [d], wherein it is stated: “There is nothing said in the new statute where the sole residuary legatee has died. Presumably, such a residuary bequest would lapse, unless it could be saved by reason of the fact that it was a disposition to issue or brothers or sisters of the testator and section 3-3.3 of the Estates, Powers and Trusts Law, which was derived from former section 29, of the Decedent Estate Law, could be applied to the facts.”)
Clearly it is one consideration for a commission to propose and the Legislature to adopt a rule of construction which will take a residuary bequest which has lapsed and pass it on to other residuary legatees named by the testator. It is an entirely different consideration for a commission to propose and the Legislature to enact a rule of construction which will pass on a lapsed residuary bequest to persons, unnamed as residuary legatees, and who were never in the contemplation and mind of the testator as a beneficiary of any part of his estate. The court finds no evidence that either the temporary commission, or the Legislature contemplated the latter result in proposing and adopting respectively EPTL 3-3.4. It does find evidence to the contrary.
*1041 While some slight bending of EPTL 3-3.4 might be permitted through judicial construction to reach a desired result, no court or Judge is permitted to tortuously twist a straightforward statutory enactment into a legislative pretzel.
Thus, salutary as an attempt to avoid intestacy may be, the statute may not be extended beyond its clearly defined limitations. If the avoidance of intestacy is the goal, then some means other than bastardizing EPTL 3-3.4 should be employed to reach the desired result. (See Matter of Tamargo, 220 NY 225, 231.)
It is the decision of this court that if there are no residuary beneficiaries who survived the testator, the saving provisions of EPTL 3-3.4 are inapplicable. It is the further decision of this court that the mere happenstance that one part of a residuary bequest is saved under the provisions of EPTL 3-3.3 by reason that it is a disposition to issue, or brothers, or sisters of a testator, in no way affects or saves other parts of a residuary bequest to which EPTL 3-3.3 is inapplicable.
There remains for consideration only the question of whether some means other than the application of either EPTL 3-3.3 or 3-3.4 can save the residuary estate from passing in intestacy.
As previously noted, our Court of Appeals in Matter of Dammann (12 NY2d 500, supra) found “tokens” at hand in the will there in issue that suggested an intention of the testatrix that the residuary bequests not pass in intestacy. Relying upon a statement contained in the will that (p 506) “ ‘no part of my estate shall go to any except those herein-before mentioned’ ”, and reading that statement with the provisions of the residuary clause, the court concluded that it was the testatrix’ intention to create a right of survivor-ship among the seven surviving residuary legatees, one having predeceased the testatrix.
The will in the instant case consists of only two dispositive provisions. Paragraph first directs the payment of all just debts and funeral expenses.
Paragraph second first bequeaths the entire residuary estate to decedent’s wife if she survives him. She did not. Paragraph second then continuing, provides that if the *1042 wife has predeceased testator, a certain diamond ring and gold medal are bequeathed to testator’s brother-in-law, “Floyd E. Wheeler”. It then provides that there be bequeathed and devised all the residue and remainder of testator’s estate to decedent’s brother-in-law, Floyd E. Wheeler, and to Eugene B. Shannon, decedent’s brother, as follows: “an undivided one-half to each, their heirs and assigns”.
The final paragraph of the will merely appoints the executrix of the estate.
Upon review, the will in issue is so brief, and the language so unequivocal, any construction similar to that in Matter of Dammann (supra) is impossible.
There is nothing available in the will in issue upon which to bottom a construction of determining intent other than the fact that the residuary bequests were made to decedent’s brother-in-law and brother “their heirs and assigns”. We examine the import of that phrase next.
Do the additional words, to wit: “their heirs and assigns” following the bequests of an undivided one half of testator’s residuary estate to two named individuals indicate that a substitutionary gift was intended to the “heirs and assigns” of the named beneficiaries in the event they predeceased the testator? That is the question posed. The answer is a decided “no” under a host of precedent.
In an extremely documented decision, Matter of Denari (165 Misc 450), that most excellent Surrogate, Wingate, held that such words were words of purchase and not of limitation. By this is meant that the cited words confirm the absoluteness of the gift to the named legatee and negate any intention of a substitutional or alternate legatee. Absent the use of the disjunctive word “or” to separate named legatees from the word “heirs”, Surrogate Wingate stated that our courts have uniformly held that no substitutionary gift to heirs of the legatee was intended. The addition of the term “heirs” merely confirms that the bequest was absolute to the named beneficiary. An extended review of prior precedent is recited by the learned Judge.
As to the employment of the additional word “assigns” following the word “heirs”, the learned Surrogate held that *1043 the employment of that word confirms completely that the additional words are not to have a substitutionary effect. “An additional principle pertinent under the phraseology of the present will is also noted in the same authority (Matter of Tamargo, 220 N.Y. 225 at p. 229): ‘[t]he use of the word “assigns” makes it clear that the gift is absolute and not alternative.’ ” (Matter of Denari, supra, p 453 [italics added].) The reason for the additional principle is explained in Matter of Tamargo (220 NY 225, supra), a well-documented decision wholly analogous, both factually and decisionally, to the case at bar (opn by Collin, J., concurred in by Hiscock, Ch. J., Cardozo, Crane and Cuddeback, JJ.). “The use of the word ‘assigns’ makes it clear that the gift was absolute and not alternative * * * In the Kimball case [.Kimball v Story, 108 Mass 382] the court said: ‘When the word “assigns” is also used, any other construction * * * would make the bequest inconsistent and uncertain, inasmuch as “assigns” could only be to those to whom the legatee had conveyed in his lifetime.’ ” (Supra, pp 229-230.)
One may well ask at this point: “If the words ‘heirs and assigns’ are to have no meaning why were they used?” Citing Matter of Clark (62 Hun 275, 282) and Matter of Eger (139 Misc 59, 63), Surrogate Wingate stated the answer lay in the “ ‘lawyer-like fondness for using several words where one is sufficient.’ ” (Matter of Denari, 165 Misc 450, 452, supra.)
Having examined (1) the provisions of EPTL 3-3.3 and (2) the provisions of EPTL 3-3.4, and (3) the will in issue for containment of “tokens” of intent per Matter ofDammann (12 NY2d 500, supra), and (4) the possible substitutionary meaning of “heirs and assigns”, and having found them all wanting as applicable theories which would support the disposition urged by the executor through its attorney, and knowing of no other possible theory, the court holds as follows:
The undivided one half of testator’s residuary estate bequeathed to testator’s brother, Eugene Shannon, passes in intestacy to those distributees of the testator provided in EPTL 4-1.1.
*1044 The undivided one-half interest of testator’s residuary estate bequeathed to testator’s brother-in-law, Floyd E. Wheeler, passes in intestacy to those distributees of the testator provided in EPTL 4-1.1.
The names of testator’s distributees are not set forth in either the petition, or the accounting by the executor, and thus they cannot be enumerated in this decision. That accounting filed with the court does indicate that with the exception of $213.36 remaining on hand, all other assets of the decedent’s estate have been distributed equally to the surviving wife and daughter of testator’s brother-in-law, Floyd E. Wheeler. It is regretable that this precipitous action was taken in advance of the approval of the executor’s accounts. The money and property must be recouped by the executor and distributed in accordance with the decision reached.
The account of the executor, as filed, is disapproved for the reasons noted. An amended account in accordance with the decision reached is ordered.